IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA ex )
rel. CHRISTOPHER CRAIG and )
KYLE KOZA, )
)
      Plaintiff–Relators, )
)    Civil Action No.
    v. )    1:22-cv-02698-JPB
)
GEORGIA TECH RESEARCH )
CORP. and BOARD OF REGENTS )
OF THE UNIVERSITY SYSTEM )
OF GEORGIA (d/b/a THE )
GEORGIA INSTITUTE OF )
TECHNOLOGY), )
)
      Defendants.

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................1

I.    The Government's False Claims Act Allegations Fail ...........................1

    A.    The 2015 Cybersecurity Rules Did Not Include the Requirements That GTRC Allegedly Violated ........................................................3

    B.    GTRC Did Not Falsely Certify Cybersecurity Compliance ............6

    C.    DoD Did Not Award the Contracts Because of Cybersecurity Promises ...........................................................................8

    D.    GTRC's Contracts Were for Fundamental Research Not Subject to DoD Cybersecurity Rules................................................10

    E.    The Cybersecurity Rules Were Not Material to GTRC's Contracts ...............................................................................15

    F.    GTRC Lacked Scienter for Allegedly False Promises About Cybersecurity..............................................................19

II.    The Government's Common-Law Claims Fail .....................................21

    A.    The Government Did Not Adequately Plead Fraud (Count III) .....21

    B.    The Government Did Not Adequately Plead Negligent Misrepresentation (Counts IV, V)....................................................22

    C.    The Government Did Not Adequately Plead Unjust Enrichment or Payment by Mistake (Counts VI and VII) ......................................23

    D.    The Government Did Not Adequately Plead Breach of Contract (Count VIII)................................................................24

CONCLUSION..................................................................................24

<u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................11

*Autumn Vista Holdings, LLC v. Timbercreek Autumn Vista, LP*,
  2017 WL 11692619 (N.D. Ga. Sept. 8, 2017)........................................20, 21

*Kwok v. Delta Air Lines Inc.*,
  994 F. Supp. 2d 1290 (N.D. Ga. 2014)...............................................................5

*Longo v. Wheeling Hosp., Inc.*,
  2019 WL 4478843 (N.D. W. Va. Sept. 18, 2019)..................................15, 16

*Springs v. Carrington Mortg. Servs., LLC*,
  2024 WL 5185670 (N.D. Ga. Mar. 13, 2024)........................................8, 22

*U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
  220 F. Supp. 3d 676 (E.D. Va. 2016)...............................................................18

*U.S. ex rel. Bibby v. Mortg. Invs. Corp.*,
  987 F.3d 1340 (11th Cir. 2021)..............................................................15, 19

*U.S. ex rel. Cimino v. IMB Corp.*,
  3 F.4th 412 (D.C. Cir. 2021)......................................................................9, 10

*U.S. ex rel. Clausen v. Lab'y. Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) .......................................................................8

*U.S. ex rel. Fahn v. GardaWorld Fed. Servs., LLC*,
  2024 WL 1605313 (M.D. Ga. Apr. 14, 2024)...............................................18

*U.S. ex rel. Feldman v. van Gorp*,
  697 F.3d 78 (2d Cir. 2012) ...............................................................................9

*U.S. ex rel. Grubbs v. Ravikumar Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .........................................................................22

*U.S. ex rel. Jackson v. Ventavia Research Group*,
    667 F. Supp. 3d 332 (E.D. Tex. 2023) ............................................................6

*U.S. ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) .......................................................................7

*U.S. ex rel. Marsteller v. Tilton*,
    556 F. Supp. 3d 1291 (N.D. Ga. 2021).....................................................9, 20

*U.S. ex rel. Mei Ling v. City of Los Angeles*,
    389 F. Supp. 3d 744 (C.D. Cal. 2019)..............................................15, 16, 17

*U.S. ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) .......................................................................4

*U.S. ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015).......................................................................5

*U.S. ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023)......................................................................................6

*U.S. v. Rogan*,
    517 F.3d 449 (7th Cir. 2008) .......................................................................9

*U.S. v. Savannah River Nucl. Sols.*,
    2016 WL 7104823 (D.S.C. Dec. 6, 2016).....................................................24

*United States v. Pub. Warehousing Co. K.S.C.*,
    2017 WL 1021745 (N.D. Ga. Mar. 16, 2017) ..............................................23

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016)..............................................................................*passim*

## STATUTES

31 U.S.C. §3729(b)(4).........................................................................................9

## REGULATIONS

81 Fed. Reg. 30439, 30445 (May 16, 2016) .............................................................6

81 Fed. Reg. 72986, 72987 (Oct. 21, 2016)............................................................11

88 Fed. Reg. 89058, 89068 (Dec. 26, 2023)..........................................................12

89 Fed. Reg. 66327, 66331 (Aug. 15, 2024) ..........................................................12

48 C.F.R. §52.204-21 (FAR 52.204-21)..........................................................5, 6, 12

48 C.F.R. §252.204-7000 (DFARS 7000)..............................................................11

48 C.F.R. §252.204-7008 (DFARS 7008) ...........................................................7, 10

48 C.F.R. §252.204-7012 (DFARS 7012)........................................................*passim*

48 C.F.R. §252.204-7019 (DFARS 7019).........................................................*passim*

## RULES

Fed. R. Civ. P. 8........................................................................................................20

Fed. R. Civ. P. 9(b)......................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

## OTHER AUTHORITIES

NIST SP 800-171 ..................................................................................*passim*

**INTRODUCTION**

The gaps in the government's Opposition confirm why the Complaint should be dismissed. The government never explains how the Department of Defense cybersecurity rules it claims Georgia Tech Research Corporation ("GTRC") violated applied to the research conducted on campus. To avoid the legal insufficiency of its Complaint, the government asserts—incorrectly—that the Court cannot consider DoD's *own cybersecurity rules and guidance*. The government instead seeks to portray the Complaint's legal infirmities as factual allegations that cannot be assessed at the pleading stage. But the dispositive issues—including what the contracts meant and what the rules required—are legal determinations that the government cannot dodge under Rule 12(b)(6), especially under the heightened Rule 9(b) pleading standard.

**ARGUMENT**

**I.    THE GOVERNMENT'S FALSE CLAIMS ACT ALLEGATIONS FAIL**

The government's unprecedented effort to convert alleged breaches of novel cybersecurity rules into FCA violations fails on multiple levels. To begin, the cybersecurity rules did not apply at all to the fundamental research being conducted at Georgia Tech. Even if they had, the operative versions of the rules did not demand what the government now claims, and the government cannot retroactively apply later-adopted standards. But even if the government could allege that GTRC breached those standards, it has not alleged what is necessary to

transform a contract violation into a fraud on the government. The government cannot identify any false promise to comply or false certification of compliance. It does not allege that any purported promise caused DoD to award the contracts to GTRC. Nor can it plead materiality when DoD paid GTRC despite full knowledge of the alleged violations. Any one of these failures alone dooms the government's attempt to extend the FCA to this uncharted territory. Together they demonstrate unequivocally why the Complaint should be dismissed with prejudice.

As explained further below, there are six independent reasons for this Court to dismiss the government's Complaint: *First*, the 2015 requirements applicable to the first contract (as opposed to later versions) did not demand a system security plan ("SSP") or antivirus software. *Second*, GTRC is never alleged to have certified compliance with DoD's cybersecurity requirements. *Third*, GTRC's supposed promises to implement the requirements are not alleged to have caused DoD to award GTRC either contract. *Fourth*, the contracts were for fundamental research not subject to the DoD cybersecurity rules. *Fifth*, as pled, cybersecurity compliance was immaterial to DoD's payment decisions. And *sixth,* the Complaint does not allege that GTRC *knowingly* made a false promise to implement an SSP, install antivirus software, or conduct a self-assessment. Each of these reasons is addressed below in turn.

**A.    The 2015 Cybersecurity Rules Did Not Include the Requirements That GTRC Allegedly Violated**

As GTRC's Motion to Dismiss ("Mot.") explained (at 8), DoD contracts require information systems handling "Covered Defense Information" to implement the "security requirements" in the version of NIST SP 800-171 that is "in effect at the time the [contract] solicitation is issued." DFARS 7012(b)(2)(i). The government now concedes that the 2015 version was in effect at the time of the EA solicitation and thus applies to that contract. *See* Opposition ("Opp.") at 26. Because the 2015 version did not require an SSP or antivirus controls, GTRC could not have violated its contract (much less the FCA) by failing to implement those controls.

The government nonetheless contends, citing "Appendix E" to the 2015 version, that GTRC was required to implement an SSP. That contention misreads the law, which provides that, on a covered system, a contractor must implement the "security requirements" in NIST SP 800-171. DFARS 7012(b)(2)(i). Chapter Three of the 2015 version, entitled "The Requirements," enumerated those 109 "security requirements." *See* Ex. 9, NIST SP 800-171 (2015). *An SSP was not one of them*. This is fatal to the claim that GTRC violated DFARS 7012 by not implementing an SSP.

Seeking to resurrect its claim, the government suggests that the obligation to implement the "security requirements" in NIST SP 800-171 extends beyond the

109 enumerated "security requirements" to dozens of additional controls listed in Appendix E that were purposefully excluded from "The Requirements." That suggestion does not square with any fair reading of NIST SP 800-171. DFARS 7012 does not mention, much less require, compliance with Appendix E. If the Astrolavos Lab had been handling CDI subject to NIST SP 800-171, it would have been required to implement only the 109 "security requirements."

Even the (non-binding) language that the government cites from the 2015 version of NIST SP 800-171 undercuts its argument that an SSP was legally mandated. That language is discretionary: contractors were "*expected to . . . routinely satisf[y]*" or "strongly *advised*" to consider Appendix E controls, including an SSP. Opp. 27 & n.4 (emphasis added). As even the government concedes, a rule that "grant[s] discretion" cannot form the basis for a false claim. Opp. 29 (quoting *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462-63 (9th Cir. 1999)).

Similarly, the government concedes that the Complaint's language requiring "antivirus software" was not added to NIST SP 800-171 until 2020 via "discussion" sections in Revision 2, *four years after* the EA contract was entered into. Opp. 27. Because those inapplicable, later-in-time "discussion" sections were the only basis pled for holding GTRC liable for lack of antivirus software, the claim must fail. The Opposition's new theory—that the 2020 language pled in the

Complaint can be backdated to 2015 because it is synonymous with an earlier "malicious code protection" requirement—is untenable. "Malicious code protection" was never defined in the 2015 version. *See* Ex. 9, NIST SP 800-171 (2015). Later versions explained that "[m]alicious code protection mechanisms *include*" antivirus software—i.e., antivirus software was just one of multiple options for protection—confirming the terms are not synonyms because "malicious code protection" encompasses other controls as well. *See* Ex. 11, NIST SP 800-171 Rev. 2, Sec. Req. 3.14.2 (emphasis added). And the government never alleges (as it could not) that GTRC failed to implement other controls that could satisfy the "malicious code protection" requirements of the 2015 version.

The government's incorrect reading of the legal requirements in NIST SP 800-171 is entitled to no deference. *Kwok v. Delta Air Lines Inc.*, 994 F. Supp. 2d 1290, 1295 (N.D. Ga. 2014). And the government's novel position—adopted for its 2025 Opposition—cannot retroactively impose obligations going back to 2016 that could give rise to an FCA violation without "potential due process problems." *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d. 281, 287 (D.C. Cir. 2015).

Nor does the final rule for a different regulation, FAR 52.204-21, dictate that antivirus software was required by the 2015 version of NIST SP 800-171. *See* Opp. 27. That later rule did not purport to require implementation of "updated virus protection" for FAR 52.204-21, let alone for NIST SP 800-171. It merely

identified "updated virus protection" as one of numerous controls that could be implemented under FAR 52.204-21—and said nothing about the requirements under NIST SP 800-171.  81 Fed. Reg. 30439, 30445 (May 16, 2016).[1]

### B.    GTRC Did Not Falsely Certify Cybersecurity Compliance

The government offers no serious response to the argument (Mot. 30-31) that GTRC's invoices cannot support express or implied certification claims.  It insists (with no authority) that a certification that GTRC's "payments" were "in accordance with [the applicable agreements]" constitutes an express certification that GTRC complied with each of the hundreds of regulations incorporated into the contracts.  Opp. 31.  This precise argument was rejected in *U.S. ex rel. Jackson v. Ventavia Research Group*, 667 F. Supp. 3d 332, 354 (E.D. Tex. 2023), where the certification similarly provided that "the amounts invoiced are for costs incurred *in accordance with the agreement*."  (Emphasis added.)  That court cautioned that "reading 'in accordance with the agreement' in isolation"—as the government asks this Court to do—would be "misleading" because "when read in context the phrase

---

[1] The government relies on *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) (which held that violating an ambiguous regulation can lead to FCA liability when a defendant knows of its "correct meaning") to assert that the Lab was obligated to draft its SSP consistent with the government's interpretation of two ambiguous cybersecurity requirements.  But the government does not respond to the argument (Mot. 28) that its suggested interpretations are inconsistent with language in NIST SP 800-171.  *SuperValu* means that a defendant can be held liable for knowingly violating the "correct meaning" of an ambiguous rule, not for violating the government's current litigation position on the meaning of that rule.

meant simply that the prices reflected in the invoice matched the contract price."

*Id.* As the Motion explained, citing cases that the government ignores, a certification that "payments" were "in accordance with the agreement [or award]" means simply that payment data in the invoices is consistent with the contract terms. *See* Mot. 30.

The government also suggests that the invoices support an implied certification claim. But it does not even attempt to identify the "specific representations about the goods or services" made in the invoices that would be necessary to support such a theory, *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 190 & n.4 (2016), or to explain how such representations rendered GTRC's claims for payment misleading half-truths. And the government never even acknowledges *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332 (9th Cir. 2017), which held that a virtually identical invoice that "provided the period of performance, total costs incurred" and "list[ed] the dollar amounts for" goods and services could not support an implied certification theory. *See* Mot. 31.

Finally, the Opposition tries to add a new certification theory not pled in the Complaint: that by merely bidding on the EA and SMOKE contracts, GTRC certified compliance with DFARS 7008, a clause that can be inserted in DoD contract solicitations to alert proposed bidders that the contract may require compliance with DFARS 7012. Opp. 30-31. This new theory fails under black-

letter FCA law because the Complaint never alleges that GTRC submitted claims for payment—the "*sine qua non*" of a presentment claim—in bidding on the contracts.  *U.S. ex rel. Clausen v. Lab'y. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).  Naturally, GTRC submitted claims for payment only after it was awarded and performed work under the contracts.  Compl. ¶¶284, 287-88.

### C.    DoD Did Not Award the Contracts Because of Cybersecurity Promises

As the Motion explained (Mot. 32-33), the government's fraudulent inducement claims under DFARS 7012 and 7019 fail because the Complaint does not plead factual causation.  Critically, the government does not dispute that the Complaint lacks particularized allegations that promises to comply with the cybersecurity rules *actually caused* DoD to award the contracts.  Indeed, as to DFARS 7012, the government presents no argument on factual causation, thereby "abandon[ing]" that claim.  *Springs v. Carrington Mortg. Servs., LLC*, 2024 WL 5185670, at *1 (N.D. Ga. Mar. 13, 2024).  The government does not dispute that the Complaint pleads no facts alleging that a single DoD official considered compliance with DFARS 7012 in awarding EA or SMOKE, much less who considered it, when, and how doing so influenced DoD's decision-making.

As to DFARS 7019 (only relevant to SMOKE), the government insists that it is excused from pleading factual causation because causation can be inferred from DFARS 7019 being a condition of contract.  Opp. 32-33.  Not so.  Factual

causation is required for a fraudulent inducement claim, and facts must be pled showing that "the defendant's conduct did in fact cause the plaintiff's injury." *U.S. ex rel. Cimino v. IMB Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021); *U.S. ex rel. Marsteller v. Tilton*, 556 F. Supp. 3d 1291 (N.D. Ga. 2021) (endorsing *Cimino*).

The authorities that the government cites, *U.S. ex rel. Feldman v. van Gorp*, 697 F.3d 78 (2d Cir. 2012), and *U.S. v. Rogan*, 517 F.3d 449 (7th Cir. 2008), concern *materiality*, not causation. Both held, pre-*Escobar*, that an agency's rules could demonstrate materiality by showing that non-compliance with those rules and regulations was "capable of influencing" a payment decision. *Feldman*, 697 F.3d at 95 (NIH guidelines sufficient to establish materiality); *Rogan*, 517 F.3d at 452 (Stark Amendment sufficient to establish materiality).

Even assuming the government's citations remain good law post-*Escobar*, "materiality and causation are not the same." *Cimino*, 3 F.4th at 419. Materiality concerns whether statements could "be capable of influencing[] the payment or receipt of money or property," *id.* (quoting 31 U.S.C. §3729(b)(4)); "[c]ausation here refers to whether fraud *in fact* caused the government to enter into a contract," *id.* (emphasis added). "[A] statement could [therefore] be material—that is, capable of influencing the government's decision to enter a contract—without causing the government to do so." *Id.*

Accordingly, for fraudulent inducement, pleading materiality does not excuse pleading factual causation. *Id.* The government thus gets it wrong: Fraudulent inducement *does* depend on "what an individual contracting officer did or did not do." Opp. 32. This Complaint lacks "sufficient facts for the court to draw a reasonable inference that [promises to comply with DFARS 7019] caused [DoD] to enter the [SMOKE contract]." *Cimino*, 3 F.4th at 421.

The fraudulent inducement claim related to the EA contract also fails. The Complaint does not plead that GTRC made a promise to comply with DFARS 7012 that DoD could have relied on in awarding the contract. The DFARS 7008 clause belatedly inserted into the EA contract award letter—issued *after* GTRC's proposal had been "*determined to be successful*"—could not have been a promise that induced DoD to award the contract. Ex. 19, EA Award Notice Letter at 1. Contrary to the government's suggestion that the award letter was merely an offer to negotiate, the letter confirms the award decision had already been made and the contract was all but finalized. Indeed, the letter attached a model contract and explained that the "resultant contract will be materially the same." *Id.*

## D. GTRC's Contracts Were for Fundamental Research Not Subject to DoD Cybersecurity Rules

The government's assertion that the EA and SMOKE contracts were subject to the DoD cybersecurity requirements mischaracterizes the regulatory regime and ignores DoD's own statements that both contracts were for fundamental research.

10

The government's contention (Opp. 23-24) that fundamental research is subject to the requirements in DFARS 7012 and 7019 is not a factual allegation—it is a legal one for the Court to assess on a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  And it is an outright misreading of DoD's regulations that should be rejected.  An information system is subject to DFARS 7012 and 7019 if and only if it "processes, stores, or transmits [CDI]."  DFARS 7012(a), (b)(2)(i).  Fundamental research, by definition, does not contain CDI.  As the Opposition states, a "project 'appropriately scoped as fundamental research will not contain any [CDI].'"  Opp. 24 (quoting 81 Fed. Reg. 72986, 72987 (Oct. 21, 2016)).  DoD has repeatedly stated that fundamental research contains no CDI, *including in the DFARS subpart that underlies this lawsuit.*  According to DFARS 7000(a)(3):  "[F]undamental research . . . by definition cannot involve any covered defense information."  GTRC's internal policy tracked DoD's rules, requiring implementation of NIST SP 800-171 for systems "involv[ing] CUI" or "[CDI]"— not, as the government suggests, Opp. 24, for fundamental research.  GTRC's legal obligations were not altered by the misunderstandings of Georgia Tech employees

who were not even involved in the contracting process.[2]  *Id.* 20-21.  The

government's attempts to show that the contracts identified CDI and thus are

subject to the cybersecurity rules also fall short.

**The EA Contract Did Not Contemplate CDI.**  The government never

disputes that there is no mention of CDI or CUI in the EA contract.  It tries to fill

that gap by referencing *other* irrelevant categories of so-called "limited access

information" in the contract.  References to "intelligence information" in the DD

254 are irrelevant, because the Complaint never alleges that the Astrolavos Lab

handled classified information.  Similarly inapt is the DD 254's reference to

possible FOUO material, which is not equivalent to CDI.[3]  The Opposition repeats

the Complaint's falsehood that one deliverable listed in the EA Contract Data

Requirements List ("CDRL") was determined to be Distribution Statement F.  As

explained (Mot. 13-14), this allegation is contradicted by the CDRL, which lists

---

[2] DoD has also repeatedly confirmed that federal contract information ("FCI") under FAR 52.204-21 cannot include fundamental research.  *See, e.g.*, 88 Fed. Reg. 89058, 89068 (Dec. 26, 2023) ("[f]undamental research that is 'shared broadly within the scientific community' is not, by definition, FCI or CUI"); 89 Fed. Reg. 66327, 66331 (Aug. 15, 2024) (same).  That the final rule for FAR 52.204-21 declined to create an express carve-out for fundamental research does not mean that such research was subject to the rule, and, in any event, DoD has expressly confirmed that FCI is not fundamental research.

[3] The Motion does not state that "FOUO cannot be CDI."  Opp. 21 n.3.  Rather, the Motion quotes DoD's own guidance providing that "an FOUO marking 'alone does not indicate that [the document] is [CDI]'" and that "'[m]ost FOUO information does not meet' the definition of CDI."  Mot. 7.

the distribution statement as "TBD" and explains (in text the government omits) that application of Distribution Statement F was "preliminary only [and that the] final distribution statement shall be determined by the government during the review process." Ex. 22, EA CDRL at 14.

The government's rejection of contemporaneous contract interpretations from DoD's own contracting officials is also unavailing. The government does not dispute the statements' authenticity nor their clear meaning: DARPA and Air Force Research Laboratory officials confirmed in writing to GTRC that the EA work done in the Astrolavos Lab was fundamental research. Ex. 5, DARPA Statement; Ex. 23, AFRL Statement. The Court should not credit the government's discounting of these indisputably authentic statements from DoD officials, which fill the gaping hole in the Complaint about whether the EA contract involved CDI—negating an essential unpled element in the government's allegations.

The absence of any allegation that DoD identified CDI through the EA contract leaves the government to argue that DoD's designation of CDI can be inferred from internal Georgia Tech communications. Opp. 13. But those communications are insufficient. DoD rules both *require* DoD to "identif[y] in the contract" any CDI (whether provided by DoD or created by the contractor), Ex. 1, PGI 204.7303-1(b)(1) (rev. Nov. 18, 2015), and *prohibit* non-governmental personnel, including Georgia Tech employees, from defining information as CDI,

*id.* ("contracting officer" "*shall*" identify CDI).  To plausibly allege that GTRC

handled CDI, therefore, the government must allege that DoD itself identified CDI

through the EA contract, not that Georgia Tech employees who were not involved

in the contracting process might have believed that CDI was involved.   The

government has not and cannot meet this burden.  *Id.*

**The SMOKE Contract Did Not Contemplate CDI.**  In its Opposition, the

government refuses to even acknowledge the multiple provisions of the SMOKE

contract and its modification that demonstrate GTRC performed fundamental

research.  Strikingly, the government ignores that both the contract and

modification expressly stated that "DARPA expects the work performed by

[GTRC] … to be fundamental research."  Ex. 25, SMOKE Contract Attachment

1A at 5; Ex. 27, SMOKE Modification Attachment 1A at 6.

Overlooking these dispositive terms, the government cites a generic

provision providing that the "contract involves [CUI]."  Opp. 21-22.  But the

contract plainly states the Astrolavos Lab would *not* handle any CUI and instead

any non-fundamental research would be performed "on Government facilities

and/or GTRI facilities."  Ex. 27, SMOKE Modification Attachment 1A at 1.[4]  The

government's contention that only "papers" were fundamental research is

---

[4] "GTRI" refers to Georgia Tech Research Institute, a DoD-designated University
Affiliated Research Center (UARC) that performs classified research in facilities
separate from GTRC's on-campus research.

contradicted by the contract's plain terms, which state that GTRC's "*work*," as opposed to work performed at GTRI, would be fundamental research.  *Id.* at 6.[5]

### E.    The Cybersecurity Rules Were Not Material to GTRC's Contracts

The government does not dispute that DoD "pa[id] a particular claim in full" despite "actual knowledge" of GTRC's alleged non-compliance with cybersecurity rules.  *U.S. ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).  As a matter of law, the government has had "actual knowledge" of GTRC's alleged non-compliance since the government intervened in this case on February 19, 2024, Dkt. 18 (though likely much earlier based on the government's lengthy investigation).  As the government's authority holds, "the date of intervention . . . could be considered actual notice to the [g]overnment at this [pleading] stage." *Longo v. Wheeling Hosp., Inc.*, 2019 WL 4478843, at *7 (N.D. W. Va. Sept. 18, 2019).  And the Complaint alleges that DoD, with actual knowledge of GTRC's alleged non-compliance, paid at least one SMOKE invoice at least two months *after* the intervention, on or after April 24, 2024.  Compl. ¶289.  Such payment is "very strong" evidence of immateriality, *Escobar*, 579 U.S. at 195, requiring "very strong counterevidence" to "rebut th[e] presumption of immateriality."  *U.S. ex rel. Mei Ling v. City of Los Angeles*, 389 F. Supp. 3d 744, 756 (C.D. Cal. 2019).

---

[5] The government correctly notes that any non-fundamental research will be completed by October 2025.

The Complaint does not rebut that presumption. The government points to its own intervention as evidence of materiality. Opp. 40-41. But if the government's own "decision to intervene in an action were given substantial weight, then materiality would be a *fait accompli* in any case where intervention has occurred, thus working an end-run around *Escobar*." *Mei Ling*, 2018 WL 3814498, at *20. *United States v. Triple Canopy*, cited by the government, is not to the contrary. 857 F.3d 174 (4th Cir. 2017). That court found materiality where the government "did not renew [the defendant's] contract" *and* "*immediately* intervened." *Id.* at 179 (emphasis added). DoD did neither. The government waited more than nineteen months after the relators filed their complaint to intervene and continues to pay GTRC's claims. *See* Dkt. 1, 17. The only other case cited, *Longo*, is not persuasive because it misreads *Triple Canopy* to hold that intervention without contract action shows materiality. 2019 WL 4478843, at *10.

The government also points to a "cure notice" as evidence of materiality. But the Complaint alleges only that DoD has provided *notice*, not refused to pay GTRC's claims. Compl. ¶280. And the notice's timing strongly suggests it is a litigation tactic rather than a contemporaneous showing of materiality. The notice was sent on August 8, 2024, *id.*, over two years after relators filed their Complaint, years after the government began investigating the allegations, and six months

after the government intervened—but, auspiciously for the government, just two weeks before the government filed its Complaint on August 22, 2024.   Dkt. 23.

As a last resort, the government asks this Court to infer materiality from the mere existence of DoD cybersecurity rules.  Opp. 42.  But statements from the interim final rules creating DFARS 7012 and 7019 cannot support the inference that DoD considers noncompliance to be material.  *See* Mot. 39.  Otherwise, the creation of any rule, supported by statements in the Federal Register proclaiming the rule's importance, would be sufficient to establish materiality.  This cannot be squared with *Escobar*'s "demanding" materiality requirement.  579 U.S. at 194.

Taken together, the Complaint's allegations are far weaker than those in *Mei Ling*, where the complaint was dismissed despite allegations that the government investigated the relevant compliance issues, rejected a related claim for payment, and intervened in the case.  *See* 2018 WL 3814498, at *20.  If the government did not adequately allege materiality in *Mei Ling*, *a fortiori* it failed to do so here too.

As to whether compliance with DoD cybersecurity rules went to the essence of the bargain between GTRC and DoD, the government does not dispute that the Complaint pleads no facts alleging that a contracting officer ever considered GTRC's compliance with the rules in awarding the contracts.  *See* Mot. 39.  The absence of such allegations is especially significant given how easy it would be for the government to make them—if they had any factual basis.

Unable to take the direct path, the government urges the Court to use "common sense" to manufacture materiality.  Opp. 37.  But "common sense" cases involve simple requirements at the heart of the contract that bear no relation to the highly technical DoD cybersecurity rules.  In *Triple Canopy*, common sense dictated that it was material to DoD whether guards deployed "in an active combat zone" could "shoot straight."  857 F.3d at 179.  The government's other cases involve similar facts, where the alleged violation went to the essence of the contract, rather than ancillary compliance matters.  *See U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 220 F. Supp. 3d 676 (E.D. Va. 2016) (military guards failed firearms qualifications); *U.S. ex rel. Fahn v. GardaWorld Fed. Servs., LLC*, 2024 WL 1605313 (M.D. Ga. Apr. 14, 2024) (military guards did not complete training).  Here, by contrast, the DoD cybersecurity rules—unrelated to the contract deliverable—only require efforts to implement an evolving set of 100-plus controls and a self-assessment score that, no matter how low, does not preclude a contract award.  Mot. 10.  The government's "common sense" cases are no fit for the hyper-technical, ever-changing standards in DFARS 7012 and 7019.[6]

Finally, the government insists that compliance with the DoD cybersecurity

---

[6] The government misreads *GardaWorld*, which did not reject on the merits the argument that leeway in rules suggests the rules' immateriality.  *GardaWorld* did not credit this argument because it did not relate to the claims pleaded in the complaint.  2022 WL 2655777, at *12.

requirements was a "core purpose" of the EA and SMOKE contracts.  But the
contractual terms make clear the purpose of the contracts was to conduct and
publish fundamental research.  *See* Mot. 12-17.  That the government does not (and
cannot) plead that anyone at DoD ever viewed cybersecurity compliance as "core"
or even that anyone at DoD ever asked the Astrolavos Lab a single question about
its cybersecurity controls shows the rules were in fact immaterial.[7]

### F.    GTRC Lacked Scienter for Allegedly False Promises About Cybersecurity

The government does not contest that, for fraudulent inducement, scienter
must be established at the time the defendant seeks the contract—when it was
carrying out the alleged fraud.  That is the standard identified in the Motion, not, as
the government now contends, a requirement that scienter be shown "at the precise
moment each contract was executed."  Opp. 33.

Under the correct standard, the government's claims about the EA contract
must be dismissed given its undisputed inability to plead facts showing that GTRC
knew in 2016 (when it executed the EA contract) that it allegedly would not
comply with DFARS 7012 by 2018 (when compliance first became mandatory, *see*
DFARS 7012(b)(2)(ii)(A)).  Nor does the Complaint plead facts satisfying the

---

[7] The government does not contest that compliance with DFARS 7012 and 7019 is
not a "condition of payment."  *MIC*, 987 F.3d at 1347.  The Motion never argued
that "conditions of *contract*" cannot satisfy *Escobar*.  *See* Opp. 43-44.  Rather
"conditions of contract" do not satisfy the "condition of payment" element.

sciter standard in *Autumn Vista Holdings, LLC v. Timbercreek Autumn Vista, LP*, 2017 WL 11692619, at *8 (N.D. Ga. Sept. 8, 2017). *See* Opp. 34. That case held, consistent with *Marsteller*, *see* Mot. 34, that at the pleading stage scienter can be inferred from allegations of non-performance plus "subsequent conduct" that is "unusual, suspicious, or inconsistent" with a defendant acting in good faith. *Id.*; *cf. Marsteller*, 556 F. Supp. 3d at 1306 (scienter can be inferred from non-performance and "other probative factors").

The Complaint falls short of this standard. It alleges statements years after the EA contract was executed by GTRC employees whom the Complaint does not allege were involved in or even knew about the EA contracting process. Opp. 35. For instance, it cites a 2019 statement from Rebecca Caravati, whom the Complaint does not allege had any basis to know about the EA contracting process three years earlier. *Id.* The government's other allegations are from *five years after* the contract formation—and attributed to IT personnel who, again, had no knowledge of the contract. *Id.* (citing Compl. ¶¶190-98). The Complaint's scienter allegations are thus weaker than those that barely satisfied Rule 8 in *Autumn Vista Holdings*; those allegations at least involved people alleged to have participated in the contracting process. 2017 WL 11692619, at *9.

The government's SMOKE arguments are equally deficient. It points to the allegation that an unidentified person in the Astrolavos Lab purportedly asked for

CDI *before* SMOKE was executed.  Opp. 36 (citing Compl. ¶127).[8]  But the

Complaint does not allege that request was granted, much less that CDI was

handled (contrary to the contract) in the Lab.  Because the contract itself states that

GTRC would perform only fundamental research, the Complaint's allegation that

someone asked for CDI before contract execution cannot support the inference that

GTRC knew when it entered into the contract that it had to, and would not, comply

with DFARS 7012 or 7019.  The other cited allegations violate the government's

own rule that conduct must be "subsequent" to contract formation to support an

inference of scienter.  *Autumn Vista Holdings*, 2017 WL 11692619, *at 8.  The

self-assessment score (2020) and Astrolavos Lab manager's discussion of antivirus

software for EA (2019) precede the SMOKE contract (2022) by years.  Opp. 36

(citing Compl. ¶¶187-88, 199, 255).  The remaining allegations cited by the

government contain no date at all.  *Id.* (citing Compl. ¶¶8-11, 237).[9]

## II.    THE GOVERNMENT'S COMMON-LAW CLAIMS FAIL

### A.    The Government Did Not Adequately Plead Fraud (Count III)

The Opposition does not address the argument (Mot. 43-45) that the

Complaint fails to adequately plead multiple elements of the fraud claim, including

---

[8] The government's assertion that the principal researcher did so is just another attempt to improperly amend the Complaint through its Opposition.  Opp. 36.

[9] The government does not separately address its false record or statement claim, which fails for all the reasons set forth in the Motion.  *See* Mot. 42.

reliance, materiality, or that the claim applies to EA.  The government's failure to respond constitutes abandonment of its claim.  *Springs*, 2024 WL 5185670, at *1.

Even if not abandoned, the government has not shown that the Complaint adequately pleads damages—a necessary element—for this or the other common-law claims.  As the Motion explained (Mot. 45), a claim for common-law fraud requires—and the Complaint lacks—allegations of economic harm.  Opp. 47.  The government's citation of cases addressing monetary recoveries under the FCA is inapt because damages is not an element of an FCA claim.  *U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009).

The government also unconvincingly asserts that it has pled enough facts to state a claim against Georgia Tech by virtue of its allegation that Georgia Tech employees helped prepare the 2020 assessment score.  Opp. 45-46.  But the fraud claim actually pled (in conclusory fashion) in the Complaint relates to *different conduct*—i.e., that, in awarding the SMOKE contract, DoD relied on a purportedly fraudulent representation in 2022 that the Astrolavos Lab had a current assessment score.  Compl. ¶313.  That purported representation was allegedly made by a GTRC employee without the involvement of Georgia Tech, *id.* ¶125, and thus there is no allegation pled connecting Georgia Tech to the alleged fraud.

**B.    The Government Did Not Adequately Plead Negligent Misrepresentation (Counts IV, V)**

The government offers a single paragraph in support of its two negligent

misrepresentation claims and fails to address any of the specific arguments raised in the Motion, including, among others: promises of future conduct (GTRC's alleged promise in 2016 to implement DFARS 7012 by 2018) cannot support a negligent misrepresentation claim; because there is no allegation GTRC invoice data were inaccurate, those invoices cannot support a misrepresentation claim; and the Complaint fails to adequately plead materiality, reliance, or injury.  Mot. 46-47. These arguments are fatal to these claims, unopposed, and warrant their dismissal.

### C.    The Government Did Not Adequately Plead Unjust Enrichment or Payment by Mistake (Counts VI and VII)

The government asserts that it may plead its equitable unjust enrichment and payment by mistake claims in the alternative to its contract claims.  Opp. 48-49. But the government has pled those claims *together*, Compl. ¶¶102, 107, violating the rule that a plaintiff cannot plead "within a single count … an agreement and that the [Defendants were] unjustly enriched."  *United States v. Pub. Warehousing Co. K.S.C.*, 2017 WL 1021745, at *10 (N.D. Ga. Mar. 16, 2017).

The cases cited by the government (Opp. 48-49) allowed alternative pleading where there was a question about whether a contract was valid or where the contract did not govern the subject matter of the equitable claims.  Here, valid contracts squarely govern the conduct at issue.  Moreover, the assertion that the equitable claims cannot be dismissed as to Georgia Tech because it was not in

privity with DoD was rejected by the government's own authority.  *See U.S. v. Savannah River Nucl. Sols.*, 2016 WL 7104823, at \*26-27 (D.S.C. Dec. 6, 2016).

### D.    The Government Did Not Adequately Plead Breach of Contract (Count VIII)

The government does not dispute that many of the regulations allegedly violated by GTRC were not incorporated in the contracts or that, given the Lab performed only fundamental research, GTRC could not have violated regulations applicable only to CDI or FCI.  In addition, the identified alleged breach—the government's "*concerns* that the technology [was] compromised"—reveals this claim to be hollow.  Opp. 50 (emphasis added).  The government does not allege that the technology developed by the Lab was compromised, and the government's speculative "concerns" cannot satisfy its burden to plead an economic injury.  That is all the more true when, as the Complaint acknowledges, DoD continues to pay for, and receive, valuable research conducted under the SMOKE contract.

## CONCLUSION

For the reasons set forth above and in the Brief in Support of the Motion to Dismiss, the Complaint should be dismissed.


Dated: January 21, 2025

 Respectfully submitted,            */s/Douglas W. Gilfillan*
                                               Douglas W. Gilfillan
                                               Georgia Bar No. 294713
                                               Gilfillan Law LLC

One Atlantic Center
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 795-5016
Doug@gilfillanlawllc.com

*Counsel for Georgia Tech Research Corp. and Georgia Institute of Technology*

*/s/Ronald Machen*
Ronald Machen*
DC Bar No. 447889
Matthew Jones*
DC Bar No. 502943
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 663-6000
Fax: (202) 663-6363
Ronald.Machen@wilmerhale.com
Matt.Jones@wilmerhale.com

George P. Varghese*
Massachusetts Bar No. 706861
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000
George.Varghese@wilmerhale.com

Peter Kurtz*
Colorado Bar No. 54305
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135

Fax: (720) 274-3133
Peter.Kurtz@wilmerhale.com

*Counsel for Georgia Tech Research Corp.*
*Admitted *pro hac vice*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/ Ronald Machen*
Ronald Machen

## CERTIFICATE OF SERVICE

**I hereby certify** that on January 21, 2025, I electronically filed the

foregoing **Reply Brief in Further Support of the Motion to Dismiss** with the

Clerk of the Court using the CM/ECF system, which will send Notices of

Electronic Filing to all counsel of record.

*/s/ Ronald Machen*
Ronald Machen
