IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA )
ex rel. CHRISTOPHER CRAIG and )
KYLE KOZA, )
  )
          Plaintiff, )
  )
    v. )
  )
GEORGIA TECH RESEARCH )
CORPORATION et al., )
  )
       Defendants. )

Civil Action No.
1:22-cv-02698-JPB

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

1. **Description of Case:**

   (a) Describe briefly the nature of this action.

   Plaintiff the United States of America alleges that Defendant Georgia

   Tech Research Corporation ("GTRC") violated the False Claims Act (31

   U.S.C. § 3729, *et seq.*) and that Defendants GTRC and the Board of

   Regents of the University System of Georgia, doing business as the

   Georgia Institute of Technology ("Georgia Tech"), violated federal

   common law.

   (b) Summarize, in the space provided below, the facts of this case.  The
   summary should not be argumentative nor recite evidence.

   United States' Summary:

1

The United States alleges that Defendants violated federal cybersecurity regulations found in the Federal Acquisition Regulation (FAR) and Defense Federal Acquisition Regulation Supplement (DFARS) with respect to at least two Department of Defense ("DoD") contracts, known as the Enhanced Attribution ("EA") and Signature Management Using Operational Knowledge and Environments ("SMOKE") contracts, associated with Georgia Tech's Astrolavos Lab. As set forth in the Complaint, the relevant cybersecurity requirements obligated Defendants to implement security controls that adequately protected sensitive, non-public DoD information and to conduct and post the results of self-assessments of compliance with the required controls in DoD's Supplier Performance Risk System ("SPRS").

Defendants violated their obligations to comply with these requirements in three ways. First, Defendants failed to provide adequate protection of sensitive DoD information because during the performance of EA and SMOKE, the Astrolavos Lab either had no system security plan ("SSP") in place at all, or implemented an SSP that even Defendants admit was inadequate. Second, Defendants also failed to provide adequate protection during the performance of the EA contract by allowing the Astrolavos Lab to operate without antivirus controls. Third,

2

rather than calculate the required self-assessment scores, to obtain DoD contracts, including SMOKE, Defendants posted in SPRS a false and fictitious score that failed to reflect the actual assessment of any IT system.

Defendant GTRC represented that it would comply with the relevant cybersecurity requirements when bidding on EA and SMOKE and also certified compliance with the awards' requirements in invoices submitted to DoD. As alleged in the Complaint, Defendants were aware that their conduct was misleading and risked the submission of false claims. As also alleged in the United States' Complaint, in August 2024, DoD agency the Defense Advanced Research Projects Agency ("DARPA") issued a cure notice to GTRC in connection with the SMOKE contract. An additional notice was sent in October 2024. DARPA then issued a stop work order in December 2024. Defendants recently requested a second extension to respond to the stop work order.

Defendants were paid in excess of $30 million for EA and SMOKE.

Defendants' Summary:

Georgia Tech is a leading public research university. The Astrolavos Lab is a group of faculty and students on Georgia Tech's

campus that performs cutting-edge cybersecurity research.  GTRC is the non-profit contracting arm for Georgia Tech's on-campus research.

The government alleges that GTRC violated the False Claims Act by submitting claims for payment on two contracts, the "Enhanced Attribution" ("EA") and "Signature Management using Operational Knowledge and Environments" ("SMOKE") contracts.  The EA contract involved research for the Department of Defense ("DOD") to create methods for revealing malicious cyber actors using unclassified information, while the SMOKE contract was part of a Defense Advanced Research Projects Agency ("DARPA," a DOD agency) program to investigate methods for tracing cyber threats.  The government has not questioned the work performed or the excellence of the research conducted by the Astrolavos Lab under the EA and SMOKE contracts. The EA contract was completed in 2021 and the SMOKE contract is ongoing.  The government has paid all invoices under each contract and continues to pay invoices under the SMOKE contract to this day.

The government alleges that GTRC's claims for payment under those contracts were false because the Astrolavos Lab failed to comply with certain evolving cybersecurity requirements.  Specifically, the government alleges that the Astrolavos Lab was required to—but failed

4

to—implement (1) a System Security Plan ("SSP") and (2) antivirus software.  The government further alleges that (3) Defendants posted a false score in the Supplier Performance Risk System ("SPRS") regarding its compliance with the cybersecurity controls.  Defendants deny that they engaged in the alleged conduct and that they violated any applicable cybersecurity regulations or requirements.

As explicitly stated in the contracts and/or acknowledged by the contracting agency (DARPA), the Astrolavos Lab would—and did—perform only fundamental research under the contracts, which is the norm for on-campus research performed by academic institutions. Fundamental research is basic and applied research in science and engineering, the results of which are ordinarily published and shared with the broader scientific community.  Under DOD regulations, the cybersecurity provisions at issue do not apply to fundamental research efforts, such as the work performed by the Astrolavos Lab under the EA and SMOKE contracts.  *See* 48 C.F.R. § 252.204-7000(a)(3).

In addition, even if the cybersecurity provisions did apply, 48 C.F.R. § 252.204-7012(b)(2)(i) ("DFARS 7012") only requires covered contractor information systems to comply with the security requirements in NIST (SP) 800-171 in effect at the time the contract solicitation was

5

issued.  48 C.F.R. § 252.204-7012(b)(2)(i) ("[T]he covered contractor information system shall be subject to the security requirements in [NIST (SP) 800-171] in effect at the time the solicitation is issued or as authorized by the Contracting Officer.").  With respect to the government's allegations regarding the lack of an SSP, at the time the EA contract solicitation was issued in April 2016, the version of NIST (SP) 800-171 that was in effect did not require contractors to create an SSP.  The requirement to create an SSP was only added in December 2016.  In addition, as the government's Complaint-in-Intervention acknowledges, before the Astrolavos Lab was awarded and began its performance on the SMOKE contract in 2022, it had created an SSP.

With respect to antivirus software, NIST (SP) 800-171 only requires protection from malicious code generally, not the installation of antivirus software specifically.  And, as the government's Complaint-in-Intervention acknowledges, the Astrolavos Lab had installed antivirus software before it was awarded and began to perform on the SMOKE contract.

Moreover, the invoices submitted by GTRC under the EA and SMOKE contracts did not mention or certify compliance with cybersecurity rules.

6

Furthermore, because the Astrolavos Lab exclusively performed fundamental research under the EA and SMOKE contracts, it was not required to post a self-assessment score in SPRS under 48 C.F.R. § 252.204-7019(b).  In addition, any allegedly false statements did not cause DOD to award the SMOKE contract to the Astrolavos Lab.

Accordingly, Defendants deny that they have failed to comply with any applicable cybersecurity requirements and deny that they have submitted false claims for payment to the government.  Defendants further deny any violations of federal common law.

(c) The legal issues to be tried are as follows:

1. Whether GTRC violated 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act;

2. Whether GTRC violated 31 U.S.C. § 3729(a)(1)(B) of the False Claims Act;

3. Whether Defendants are liable for fraud under federal common law;

4. Whether Defendants are liable for negligent misrepresentation under federal common law;

5. Whether Defendants are liable for unjust enrichment under federal common law;

7

6. Whether Defendants are liable for payment by mistake under federal common law;

7. Whether GTRC is liable for breach of contract under federal common law;

8. Whether the United States is entitled to damages or other relief and, if so, in what amount.

(d) The cases listed below (include both style and action number) are:

(1) Pending Related Cases: None.

(2) Previously Adjudicated Related Cases: None.

**2. This case is complex because it possesses one or more of the features listed below (please check):**

_____ (1) Unusually large number of parties

_____ (2) Unusually large number of claims or defenses

_X_ (3) Factual issues are exceptionally complex

_X_ (4) Greater than normal volume of evidence

_X_ (5) Extended discovery period is needed

_____ (6) Problems locating or preserving evidence

_____ (7) Pending parallel investigations or action by government

_X_ (8) Multiple use of experts

_X__ (9) Need for discovery outside United States boundaries

_X_ (10) Existence of highly technical issues and proof

_X_ (11) Unusually complex discovery of electronically stored information

3. **Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

<u>United States</u>:

> Joanna G. Persio
> Trial Attorney, Civil Division
> U.S. Department of Justice
> 175 N. Street NE, Rm. 10.104
> Washington, D.C. 20002
> (202) 616-3677
> joanna.g.persio@usdoj.gov

> Adam D. Nugent
> Assistant United States Attorney
> Melanie D. Hendry
> Assistant United States Attorney
> 600 Richard B. Russell Building
> 75 Ted Turner Drive, SW
> Atlanta, Georgia 30303
> 404-581-6000
> adam.nugent@usdoj.gov
> melanie.hendry@usdoj.gov

<u>Defendants</u>:

> Ronald Machen
> Matthew Jones
> Wilmer Cutler Pickering
> Hale and Dorr, LLP
> 2100 Pennsylvania Avenue NW
> Washington, D.C. 20037
> Tel: (202) 663-6000
> Fax: (202) 663-6363

> George P. Varghese
> Wilmer Cutler Pickering
> Hale and Dorr, LLP
> 60 State Street

Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Douglas W. Gilfillan
Gilfillan Law LLC
One Atlantic Center
1201 West Peachtree Street, Suite 2300
Atlanta, GA  30309
Tel: (404) 795-5016

Ava J. Conger
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Phone: (404) 815-6020
Fax: (404) 541-3174
aconger@ktslaw.com

**4.  Jurisdiction:**

Is there any question regarding this Court's jurisdiction?

_____Yes    __X__No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection.  When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based.  Each objection should be supported by authority.

**5.  Parties to This Action:**

(a) The following persons are necessary parties who have not been joined:

None.

(b) The following persons are improperly joined as parties:

None.

(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

None.

(d) The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6. Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendments are contained in LR 15.

(a) List separately any amendments to the pleadings that the parties anticipate will be necessary:

None.

(b) Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7. Filing Times for Motions:**

All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.
All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).
(a) *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.
(b) *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.

(c) *Other Limited Motions:* Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony:* <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.

## 8.  Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE: Your initial disclosures should include electronically stored information.  Refer to Fed. R. Civ. P. 26(a)(1)(B).

The parties will exchange initial disclosures by March 24, 2025.

## 9.  Request for Scheduling Conference:

Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.

The parties do not request a scheduling conference with the Court at

this time.

## 10.  Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in

12

Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

United States' Position:

The United States anticipates that fact and/or expert discovery will be needed on several matters, which include, but are not limited to the following:

1.  Defendants' knowledge and/or awareness of DFARS 7008, 7012, 7019, 7020, FAR 52.204-21, their obligations to protect government information in connection with the relevant contracts, their violations of those obligations, and the falsity of claims and statements to the United States.

2.  The facts and circumstances surrounding Defendants' calculation and posting of summary level scores in SPRS.

3.  The facts and circumstances surrounding Defendants' development and implementation of system security plans at the Astrolavos Lab.

4.  The facts and circumstances surrounding Defendants' implementation and use of anti-virus or anti-malware controls on the Astrolavos Lab systems used for government contracts.

5. The facts and circumstances surrounding the presence of Controlled Unclassified Information ("CUI"), Covered Defense Information ("CDI"), and/or Federal Contract Information ("FCI") on the Astrolavos Lab systems.

6. The facts and circumstances surrounding Defendants' bids on the relevant contracts.

7. The facts and circumstances surrounding Defendants' submission of claims for payment in connection with the relevant contracts.

8. Damages arising from Defendants' failure to abide by the relevant cybersecurity requirements.

Defendants' Position:

Defendants anticipate that fact and/or expert discovery will be needed on several matters, which include, but are not limited to the following:

1. The government's and relators' notes, documents, communications, internal records, or other files regarding or related to the allegations in the relators' Complaint and/or the government's Complaint-in-Intervention.

2. All communications between relators and the government.

3. The government's and relators' communications with any current or former employees and representatives of Defendants related to

14

the allegations in the relators' Complaint and/or the government's Complaint-in-Intervention.

4.  The government's notes, documents, internal records, or other files regarding or related to communications or negotiations with Defendants regarding the EA and SMOKE contracts and any amendments to those contracts.

5.  Documentation provided to the government or relators by Defendants' current or former employees and representatives and/or other third-parties related to the allegations in the relators' Complaint and/or the government's Complaint-in-Intervention.

6.  The government's and relators' notes, documents, communications, internal records, or other files regarding or related to the EA and/or SMOKE contracts, including all communications to the Defendants' current or former employees and representatives related to work performed under the contracts.

7.  The government's notes, documents, communications, internal records, or other files regarding or relating to the Department of Defense's knowledge of actual or potential noncompliance by contractors with cybersecurity requirements.

8.  The government's notes, documents, communications, internal records, or other files regarding or relating to the withholding of payment or termination of contract by the Department of Defense under any contract based on actual or potential non-compliance by contractors with cybersecurity requirements.

9.  The government's notes, documents, communications, internal records, or other files regarding or relating to the payment or continuation of contract by the Department of Defense under any contract notwithstanding an actual or potential non-compliance by contractors with cybersecurity requirements.

10. The government's notes, documents, communications, internal records, or other files regarding or relating to its use and evaluation of Supplier Performance Risk System ("SPRS") scores with respect to the EA and/or SMOKE contracts, as well as for contractors more generally.

11. The government's notes, documents, communications, internal records, or other files regarding or relating to—but not limited to—controlled unclassified information, covered defense information, and fundamental research.

12. The government's policies, procedures, and guidance regarding what is considered controlled unclassified information, covered defense information, and fundamental research, including any changes to that guidance during the relevant time period.

13. Contracts between the Department of Defense and other parties doing fundamental research in which controlled unclassified information, covered defense information, or fundamental research is defined.

14. The government's policies, procedures, and guidance regarding interpretation, implementation, or enforcement of DFARS 7008, 7012, 7019, 7020, and FAR 52.204-21 during the relevant time period, including any changes.

15. The government's notes, documents, communications, internal records, guidance, analysis, and statistics regarding contractor compliance or noncompliance with DFARS 7008, 7012, 7019, 7020, and FAR 52.204-21.

16. The government's notes, documents, internal records, or other files regarding or related to—but not limited to—the applicability of DFARS 7008, 7012, 7019, 7020, and FAR 52.204-21 to fundamental research.

17. The government's notes, documents, internal records, or other files regarding or related to—but not limited to—the applicability of DFARS 7008, 7012, 7019, 7020, and FAR 52.204-21 to contracts executed pursuant to solicitations issued prior to the effective date of any amendment to the relevant DFARS or FAR provision.

18. The government's and relators' notes, documents, communications, internal records, or other files regarding or relating to the August 8, 2024 cure notice sent from Mark Q. Jones to Ashley Smith concerning the SMOKE contract, and the subsequent stop work order.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

The parties believe that fact discovery can be completed in this case in 12 months with 4 months of expert discovery to follow. Expert disclosures and reports shall be served 30 days after the close of fact discovery. Rebuttal reports shall be served 45 days after opening expert reports. Expert depositions shall be completed no later than 45 days after rebuttal reports are served.

The parties believe that additional time will be needed to complete discovery.  This matter raises complex technical issues regarding Defendants' cybersecurity compliance and practices that span nearly a decade.  Both sides anticipate designating multiple experts to provide testimony in this matter, and discovery is also likely to entail the production by all parties of a significant volume of electronically stored information from multiple locations and sources.  Moreover, the discovery to be produced may include information associated with the programs at issue in this litigation, which the United States deems sensitive and anticipates may necessitate extended timelines for review and authorization prior to disclosure.  Manos Antonakakis, the Astrolavos Lab's director and principal investigator on the EA and SMOKE contracts, is anticipated to begin a three-year leave of absence from Georgia Tech in June 2025 during which he may spend extended periods in his native Greece.  As noted in Section 2 above, depending on the discovery schedule, the parties anticipate that the case could require discovery outside United States boundaries as a result.

## 11. Discovery Limitation and Discovery of Electronically Stored Information:

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The parties agree that depositions of experts disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(A) shall not count towards the limitation on number of depositions set forth in Federal Rule of Civil Procedure 30(a)(2).

(b) Is any party seeking discovery of electronically stored information?

__X__ Yes      ____ No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties are not in a position at this time to agree upon the sources and scope of the production of electronically stored information. The parties have agreed to continue conferring about these topics and attempt to reach an agreement on issues regarding discovery of electronically stored information within 30 days after serving initial disclosures. Within 30 days after serving initial disclosures, the government will file a joint stipulation with the agreement that has been reached or, if an agreement is not reached, the parties will submit a joint filing with their competing positions.

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native),

method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

The parties are not in a position at this time to agree upon the format for the production of electronically stored information.  The parties have agreed to continue conferring about these topics and attempt to reach an agreement on issues regarding discovery of electronically stored information within 30 days after serving initial disclosures.

Within 30 days after serving initial disclosures, the government will file a joint stipulation with the agreement that has been reached or, if an agreement is not reached, the parties will submit a joint filing with their competing positions.

## 12.  Other Orders:

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

1. Protective Order: The parties expect to request the Court to enter a mutually agreeable protective order pursuant to Fed. R. Civ. P. 26(c).  Discovery will not be produced until a protective order is entered.

2. Service by Email: For documents that are required to be served in accordance with Fed. R. Civ. P. 5, the parties consent to having

those documents sent to their counsel of record by email or secure

file transfer.  Service of any document required to be served under

Rule 5 is therefore effective if the serving party emails or sends

that document by secure file transfer to the party's counsel of

record provided the serving party does not receive confirmation

that the document failed to reach its recipient.

## 13. Settlement Potential:

(a) Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on February 20, 2025, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.

For plaintiff: Lead counsel (signature): /s/ Joanna G. Persio

Other participants: Assistant United States Attorney Adam Nugent, Assistant United States Attorney Melanie Hendry

For defendants: Lead counsel (signature): /s/ Ronald C. Machen

Other participants: Matthew Jones, George P. Varghese, Douglas Gilfillan, Ava Conger

(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_X__) A possibility of settlement before discovery.

(____) A possibility of settlement after discovery.

(____) A possibility of settlement, but a conference with the judge is needed.

(____) No possibility of settlement.

(c) Counsel (__X__) do or (____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The proposed date of the next settlement conference is ____n/a_____, 2025.

(d) The following specific problems have created a hindrance to settlement of this case.

The parties have been unable to reach settlement given sharply divergent views of the merits of the United States' claims and the damages, if any, resulting from the alleged conduct.  No additional settlement conferences have been scheduled at this time.

## 14. Trial by Magistrate Judge:

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a) The parties (_____) do consent to having this case tried before a magistrate judge of this Court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 2025.

(b) The parties (__X__) do not consent to having this case tried before a magistrate judge of this Court.

*Counsel for Plaintiff United States of America*

MICHAEL D. GRANSTON
DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

/s/ Joanna G. Persio
JAMIE ANN YAVELBERG
SARA MCLEAN
JOANNA G. PERSIO
TRIAL ATTORNEY, CIVIL DIVISION
D.C. Bar No. 988614
U.S. Department of Justice
175 N. Street NE, Rm 10.104
Washington, D.C. 20002
Telephone: (202) 616-3677
joanna.g.persio@usdoj.gov

RICHARD S. MOULTRIE, JR.
ACTING UNITED STATES ATTORNEY

/s/ Adam D. Nugent
ADAM D. NUGENT
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 381008
MELANIE D. HENDRY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 867550
600 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
404-581-6000
adam.nugent@usdoj.gov
melanie.hendry@usdoj.gov

*Counsel for Georgia Tech Research Corp. and Georgia Institute of Technology*

*/s/ Ronald Machen*
Ronald Machen* (DC Bar No. 447889)
Matthew Jones* (DC Bar No. 502943)
Wilmer Cutler Pickering
    Hale and Dorr, LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 663-6000
Fax:  (202) 663-6363
Ronald.Machen@wilmerhale.com
Matt.Jones@wilmerhale.com

George P. Varghese* (Massachusetts Bar No. 706861)
Wilmer Cutler Pickering
    Hale and Dorr, LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Fax:  (617) 526-5000
George.Varghese@wilmerhale.com
*Admitted pro hac vice

*/s/ Douglas W. Gilfillan*
Douglas W. Gilfillan (Georgia Bar No. 294713)
Gilfillan Law LLC
One Atlantic Center
1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
Telephone: (404) 795-5016
Doug@gilfillanlawllc.com

*/s/ Ava J. Conger*
Ava J. Conger
Georgia Bar No. 676247
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Phone: (404) 815-6020
Fax: (404) 541-3174
aconger@ktslaw.com

# [PROPOSED] SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

In light of the complexity of this matter, the Court orders that there shall be a 12-month fact discovery period commencing thirty days after appearance of the first defendant by answer and a 4-month expert discovery period commencing upon the close of fact discovery. The parties' expert disclosures and reports shall be served 30 days after the close of fact discovery. Rebuttal reports shall be served 45 days after opening expert reports. Depositions of expert witnesses shall be completed no later than 45 days after service of rebuttal reports.

IT IS SO ORDERED, this _____ day of _____, 2025.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. CHRISTOPHER CRAIG and<br>KYLE KOZA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA TECH RESEARCH<br>CORPORATION et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:22-cv-02698-JPB |

<u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing <u>JOINT PRELIMINARY REPORT AND DISCOVERY PLAN</u> has been prepared using Times New Roman, 14-point font, pursuant to Local Rules 5.1 and 7.1D.

This the 25th day of February 2025.

<u>/s/ Joanna G. Persio</u>
Joanna G. Persio
Trial Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. CHRISTOPHER CRAIG and<br>KYLE KOZA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA TECH RESEARCH<br>CORPORATION et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:22-cv-02698-JPB |

## CERTIFICATE OF SERVICE

I served the foregoing Joint Report and Discovery Plan using the Court's

CM/ECF system, which automatically notifies the parties and counsel of record.


This the 25th day of February 2025.



/s/ Joanna Persio
Joanna G. Persio
Trial Attorney